UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| WILLIAM KERN,<br><br>  Plaintiff,<br><br>-against-<br><br>CITY OF NEW YORK, NEW YORK CITY POLICE DEPARTMENT OFFICER MICHAEL SLINKOSKY, Badge # 19930 , AND NEW YORK CITY POLICE DEPARTMENT  OFFICER RYAN BARBER, Badge#  23971.<br>        Defendants. | **COMPLAINT**<br><br><br>Docket No.: 24-CV-9186 |

Plaintiff, William Kern ("Kern"), by his attorneys at Barket Epstein Kearon Aldea & LoTurco, LLP, brings this action against the City of New York, and Officers Michael Slinkosky and Ryan Barber (the "Individual Defendants") for violations of his civil rights as set forth below.

## INTRODUCTION

1. William Kern, a middle-aged man, had a medical emergency at work. On the morning of November 3, 2023, Mr. Kern was driving a tractor trailer, making deliveries to Fairway. He had not consumed alcohol or drugs in the prior 24 hours. Mr. Kern felt light-headed, as if his blood sugar was dropping, and pulled over to the side of the road where he could safely park the tractor trailer. Mr. Kern then passed out.

2. Responding officers questioned Mr. Kern in the ambulance as FDNY EMT employees warned the officers that Mr. Kern needed to get to the hospital, as it was a medical emergency. Without evidence that Mr. Kern was under the influence of illegal drugs, however, Officer Slinkosky decided to arrest Mr. Kern in the ambulance, before the ambulance left for the hospital.

1

3. Compounding the problem, at the hospital, Officer Barber harassed and physically assaulted Mr. Kern, over the objections of nurses and doctors, for the sole purpose of obtaining a blood test refusal from Mr. Kern. Officer Barber knew that Mr. Kern could not consent because Mr. Kern was visibly unconscious. Knowing that Mr. Kern's commercial driver's license would be suspended, Officer Barber maliciously sought a refusal from an unconscious Mr. Kern, so that Mr. Kern would lose his license and ability to earn wages as a commercial driver. Officer Barber also sought to intimidate and embarrass Mr. Kern in front of the hospital staff by repeatedly yelling at Mr. Kern and pushing him to wake up him.

4. Officer Barber knew that he did not need to obtain blood results from Mr. Kern too—before proceeding to obtain the refusal, a doctor told him that the hospital had already completed blood tests and Officer Barber acknowledged that he could obtain Mr. Kern's blood results from the hospital. Thus, Officer Barber sought to request Mr. Kern's consent for the sole purpose of obtaining a refusal that he knew Mr. Kern could not consciously provide.

## JURISDICTION AND VENUE

5. This Court has jurisdiction pursuant to 42 U.S.C. §1983 and the Fourth Amendment to the Constitution of the United States and the New York Constitution. Jurisdiction is conferred upon this Court under 28 U.S.C. §§1331 and 1343(a)(3), as this is a civil action arising under the Constitution and laws of the United States.

6. This Court may exercise supplemental jurisdiction over the state law causes of action herein pursuant to 28 U.S.C. §1367(a).

7. Venue is proper in the Southern District of New York under 28 U.S.C. §§1391(b)&(C), because that is the judicial district in which the claims arose.

## MUNICIPAL LAW OBLIGATIONS

8. Plaintiff timely served a notice of claim upon the City of New York on or about January 29, 2024, less than ninety days after his claims accrued.

9. Plaintiff attended and participated in a hearing pursuant to N.Y. Gen. Municipal Law §50-H on August 16, 2024. More than thirty days have elapsed since Plaintiff served his Notice of Claim, and Mr. Kern's claims have not been settled, adjusted, or otherwise withdrawn.

## PARTIES

10. Plaintiff resides in Suffolk County, New York, and brings this suit in his individual capacity.

11. Defendants Slinkosky and Barber, police officers at the New York City Police Department, were at all relevant times agents and officers of New York City, a municipality in the State of New York, acting under color of law.

12. Defendants were acting in the scope of their employments under color of state law at all relevant times. The officers are sued in their individual capacities.

13. Defendant New York City is a municipal entity in the State of New York with power to hire, train and discipline members of the New York County Police Department, as well as to conduct internal investigations into allegations of wrongdoing.

14. Defendant New York City is a municipality in the State of New York. New York City, at all relevant times, was the employer of all individually named defendants in this case, all of whom were acting in the scope of their employment under color of state law, and it is liable in this action pursuant to the doctrine of *respondeat superior*.

## STATEMENT OF FACTS

15. In November 2023, Mr. Kern was 48 years old.

16. In November 2023, Mr. Kern had diabetes, anxiety, and undiagnosed pneumonia.

17. In November 2023, Mr. Kern was obese.

18. Mr. Kern's wife was seven months pregnant in November 2023.

19. Mr. Kern is a truck driver working for Inter-County Bakers based in Deer Park, New York.

20. Mr. Kern drove an 18-wheeler tractor trailer.

21. Mr. Kern earned $29 hourly working for Inter-County Bakers.

### *Mr. Kern Suffers a Medical Emergency During Early Morning Shift*

22. On the morning of November 3, 2023, Mr. Kern left his home in Port Jefferson, New York at approximately 2:15 a.m. to arrive at work in Deer Park, New York by 3:00 a.m.

23. When he left for work on the morning of November 3, Mr. Kern had not consumed alcohol, taken medications other than his normal medications, or consumed illegal substances, in a twenty-four-hour period.

24. Mr. Kern drove from Deer Park, on Long Island, to the Bronx to pick up his first delivery of the day.

25. Mr. Kern left the Bronx to make his first delivery in Kips Bay, Manhattan at approximately 5:15 a.m.

26. Mr. Kern began driving down Second Avenue.

27. Mr. Kern began to feel unwell when he was driving in East Harlem near 115th Street and Second Avenue.

28. Mr. Kern suddenly felt light-headed, later reporting that he felt as though his blood sugar was dropping rapidly.

29. Mr. Kern applied the air brake for both the trailer and the tractor.

30. Mr. Kern pulled the truck over on the side of the road and parked.

31. Mr. Kern then passed out.

32. Mr. Kern regained consciousness briefly and recalled being in an ambulance and could see his tractor trailer parked on the side of the road.

33. Officer Michael Slinkosky responded to Second Avenue and 115th Street at approximately 6:04 a.m. and observed Mr. Kern being placed in an ambulance.

34. FDNY Lt. Curley informed Officer Slinkosky that Lt. Curley observed Mr. Kern slumped over the wheel, drooling, with pinpoint pupils.

35. On questioning by officers, Mr. Kern denied taking opiates, consuming alcohol, or any illegal drugs multiple times.

36. Mr. Kern informed the officers that he was diabetic.

37. As reflected in the body camera footage, Mr. Kern presented himself calmly, spoke clearly, and directly responded to the officers' questions.

38. Officers on the scene suspected that Mr. Kern was having a medical emergency. For example, when one officer asked if Mr. Kern had overdosed, another officer stated he "wasn't sure if it was a medical condition."

39. Neither Lt. Curley nor Officer Slinkosky reported seizures, difficulty or trouble breathing, irregular, fast or slow, or shallow breathing, pale or blue lips or fingernails, cold and clammy skin, sweating, agitation, or nausea and vomiting.

40. Officer Slinkosky did not administer any tests to determine intoxication.

41. Officers observed that Mr. Kern was not under the influence of alcohol.

### *Officers Arrest Mr. Kern and Interrogate Him When Mr. Kern was Medically Incapacitated*

42. Officers placed Mr. Kern in handcuffs while he was in the ambulance, informing him that he was under arrest, before the ambulance left for the hospital.

43. The FDNY ambulance transported Mr. Kern to Metropolitan Hospital in Harlem.

44. Officers informed Mr. Kern again at Metropolitan Hospital that he was under arrest. When a nurse was interviewing Mr. Kern, in the presence of Officer Slinkosky, Mr. Kern explained that he had passed out once before because of his blood sugar. He told the nurse that he was prescribed Jardiance.

45. Mr. Kern told the nurse that he was nauseated, confused, and anxious.

46. No witness observed Mr. Kern driving erratically, nor had any witness observed Mr. Kern consuming alcohol or other drugs.

47. Mr. Kern did not smell of alcohol.

48. Mr. Kern exhibited no other signs that he had consumed opioids or other illegal substances.

49. At the hospital, Officer Barber, in the presence of Officer David Kim and Officer Slinkosky, tried to wake Mr. Kern. Officer Barber sought to warn Mr. Kern that his refusal to consent to a blood test while he was unconscious would constitute a refusal, and his license would be automatically suspended.

50. To wake up Mr. Kern, Officer Barber repeatedly pushed and grabbed Mr. Kern's arm and shoulder, shaking him, and yelling his name. Each time Officer Barber shook Mr. Kern, Mr. Kern would slightly regain consciousness and dose off within seconds.

51. When Mr. Kern dozed off, Officer Barber shook Mr. Kern again and yelled his name to wake him up again.

52. Officer Barber repeated this process throughout his attempt to obtain a refusal.

53. Officer Barber sought to wake Mr. Kern so that Mr. Kern could be aware of doctors and nurses staring at him while Officer Barber embarrassed him by obtaining a refusal.

54. While Officer Barber was shaking and yelling at Mr. Kern, a nurse informed Officer Barber that Mr. Kern was incapable of providing consent.

55. Officer Barber responded to the nurse by yelling at her, instructing her to leave the room, and telling her that she could not tell him that Mr. Kern could not consent.

56. Following this exchange, Mr. Kern's doctor informed Officer Barber that the hospital had already conducted bloodwork, which would include drug screening.

57. Officer Barber acknowledged that the People could obtain the blood results but insisted on completing a refusal warning to Mr. Kern.

58. Officer Barber insisted that Mr. Kern provide a refusal.

59. Officer Barber continued to ask Mr. Kern, who was unconscious, if he was refusing consent.

60. When doctors and nurses steadfastly maintained that Mr. Kern could not consent, Officer Barber told the nurses that "You people need to understand" that it was "not [their] responsibility" to tell Barber whether Mr. Kern could "consent."

61. Officer Barber spoke to nurses and other medical staff in a condescending and demeaning tone, with a raised voice.

62. Officer Barber spoke in a disrespectful manner to the nurses and medical staff ordering them to stay away from him while he attempted to force Mr. Kern to answer his questions.

7

63. Officer Barber told the nurses and doctors: "I just have to ask him what I need to ask him, if he's not going to be awake enough to answer, that's fine, it's going to be deemed a refusal. This is what we do."

64. Officer Barber knew that he did not need to force Mr. Kern to become conscious in order to obtain blood test results because he had already been informed the hospital had conducted blood testing.

65. Officer Barber tried again to read Mr. Kern a refusal warning.

66. Officer Barber repeated to Mr. Kern that his "lack of refusal would be deemed a refusal warning."

67. Mr. Kern was unconscious when Officer Barber read the warning.

68. Officer Barber continued to push and grab Mr. Kern as he hastily read the refusal warning again while Mr. Kern kept falling unconscious.

69. After Officer Barber read the warning, he again grabbed Mr. Kern's arm and shoulder and attempted to shine a flashlight in Mr. Kern's eyes.

70. At the time, Officer Barber did not know Mr. Kern's diagnosis, nor did he know whether a flashing light in Mr. Kern's eyes could exacerbate any symptoms.

71. Mr. Kern had trouble breathing and the nurse applied an oxygen mask.

72. Despite knowing that Mr. Kern had not consumed alcohol, as officers previously acknowledged, Officer Barber asked the nurse if she would remove the mask so that Barber could perform a breath test.

73. The nurse told Officer Barber that she could not release the oxygen mask because Mr. Kern would not be able to breathe.

8

74. Officer Barber acted with an improper purpose in seeking Mr. Kern's refusal. He sought self-gratification in embarrassing and intimidating Mr. Kern in front of medical staff, other police officers, and the general public.

75. Officer Barber sought to cause anxiety to Mr. Kern.

76. Officer Barber sought self-gratification in bossing nurses around and ordering them to leave the emergency room in front of doctors, other police officers, and the general public.

77. Officer Barber sought to cause economic harm to Mr. Kern, knowing that he earned a living with a commercial driver's license.

78. Officer Slinkosky and Officer Kim were present during the entire exchange and failed to intervene.

79. At the hospital, Mr. Kern was observed as having warm and dry skin, normal breath, and a fast heart rate. The medical staff did not observe Mr. Kern drooling.

80. Mr. Kern repeatedly denied alcohol and drug use.

81. The same day, on November 3, Mr. Kern's laboratory results returned negative for any drugs, including opiates and marijuana.

82. Mr. Kern remained handcuffed to his hospital bed for the entire time he was in the hospital.

83. Officers transported Mr. Kern to 100 Centre Street on November 5, 2023.

84. On November 5, 2023, Mr. Kern was booked and placed in a holding cell.

85. Mr. Kern was held in a holding cell for approximately seven hours.

86. At his arraignment, Mr. Kern showed the judge the toxicology report reflecting negative test results from the hospital.

87. The court suspended Mr. Kern's license because of Officer Barber and Slinkosky's report indicating that Mr. Kern refused to submit to blood testing.

88. Mr. Kern's criminal case was adjourned until December 1, 2023.

89. Mr. Kern's license suspension was terminated on December 1, 2023.

90. Mr. Kern's license was reinstated on January 20, 2024.

91. Mr. Kern's refusal hearing terminated in his favor on March 1, 2024.

92. The refusal and suspension will remain on Mr. Kern's driving record indefinitely.

93. Mr. Kern's criminal case was dismissed in his favor on April 18, 2024.

### *Defendants Initiate Criminal Charges Against Mr. Kern Without Probable Cause*

94. Because of the Defendants' misconduct, Mr. Kern became the subject of a criminal complaint charging him with alleged violations of VTL §§1192(3) and 1192(4).

95. In the criminal complaint, Officer Slinkosky signed an affidavit that was false and misleading in several respects.

96. Officer Slinkosky purposefully omitted the negative drug screen from his affidavit.

97. Officer Slinkosky's affidavit cited the existence of a prescription for medication but omitted that the prescription was two years old.

98. Officer Slinkosky and Lt. Curley falsely reported that Mr. Kern was "foaming" at the mouth.

99. Officer Slinkosky's affidavit falsely reported that he observed Mr. Kern "sweating profusely" when the body camera footage reflects Mr. Kern was not sweating, and that officers had not observed Mr. Kern sweating.

100. Officer Slinkosky made the materially misleading allegation that Mr. Kern refused to take a blood test when, in reality, he had not consented solely due to the fact that he was unconscious and not capable of giving consent.

101. Lt. Curley signed an affidavit falsely stating that Officer Slinkosky's statements were "true."

*Damages*

102. The Defendants' illegal behavior caused Mr. Kern emotional distress, humiliation, loss of liberty, loss of wages, indefinite harm to his driving record which he relies on for his employment, damage to his reputation, and pecuniary injuries arising from the fees associated with his criminal defense.

103. Because of Mr. Kern's unlawful arrest and imprisonment during a terrifying medical emergency, his predisposition toward psychological illness and distress has been exacerbated.

104. Because of Mr. Kern's injuries, including his anxiety and depression following the false arrest and imprisonment, Mr. Kern could not work for three months following his accident and was on unpaid leave.

105. Because Officer Barber unlawfully insisted on obtaining Mr. Kern's refusal, knowing that Mr. Kern earns a living with his commercial license, Mr. Kern will indefinitely suffer by having to report his suspension to future employers and pay higher insurance premiums.

106. As a direct and proximate result of the acts of the Defendants, Mr. Kern's rights under the state and federal constitutions were violated.

107. Because of the nature of these wrongs, including the egregious behavior by Officer Barber, punitive damages are appropriate.

108. Upon prevailing, Plaintiff will also be entitled to attorneys' fees under 42 U.S.C. 1988(b).

109. Damages are in the amount to be determined at trial but are in excess of five hundred thousand dollars ($500,000.00) exclusive of interest, costs, and attorneys' fees.

## JURY DEMAND

110. Pursuant to the Seventh Amendment of the United States Constitution, Plaintiff requests a jury trial on all issues and claims set forth in the Complaint.

## CAUSES OF ACTION

### FIRST: FALSE ARREST
42 U.S.C. §1983
*Against New York City and the Individual Defendants*

111. Plaintiff repeats the allegations above as though set forth again herein.

112. The Individual Defendants, in the course of responding to a medical emergency, arrested Plaintiff in an ambulance without probable cause and with the intent to unlawfully confine Plaintiff.

113. When Plaintiff was placed in handcuffs in the ambulance, he was not free to leave.

114. Plaintiff was conscious of, and at no point consented to, the confinement by the Individual Defendants.

115. Under the totality of the circumstances, the Individual Defendants lacked probable cause to arrest Plaintiff on his way to the hospital.

116. The Individual Defendants continued to confine Plaintiff unlawfully for days at the hospital and later, for a lengthy stay in a holding cell, despite lacking probable cause to arrest Plaintiff.

117. The Individual Defendants knew or should have known that they lacked a basis to arrest Plaintiff.

118. The Individual Defendants knew or should have known that they lacked an adequate basis to keep Plaintiff in custody at the hospital, transport him to arraignment, confine him in jail, and prosecute him for driving under the influence after his drug screen reflected that he had not taken drugs.

119. The Defendants' actions were the direct and proximate cause of violations of Plaintiff's constitutional, state, and other legal rights, and of damages including pain, suffering, mental distress, anguish, humiliation, and loss of income.

120. The Plaintiff is entitled to compensatory damages commensurate with the damage caused by the Defendants' malicious and unlawful arrest and prosecution resulting in lost wages, a suspended license, and permanent damage to his career.

121. The Plaintiff is entitled to punitive damages in light of the reprehensible nature of the Defendants' conduct.

122. Plaintiff is entitled to attorney's fees and court costs arising under 42 U.S.C. §1988(b).

**SECOND: FALSE ARREST UNDER NEW YORK STATE LAW**
*Against the City and the Individual Defendants*

123. Plaintiff repeats the allegations above as though set forth again herein.

124. In committing the acts alleged herein, each of the Individual Defendants were members and agents of the NYPD, acting at all relevant times within the scope of their employment. The Defendant New York City is accordingly vicariously liable as principal for all torts in violation of state law committed by its agents.

125. The Individual Defendants intended to confine Plaintiff as soon as he regained consciousness in the ambulance and the officers informed Plaintiff that he was under arrest.

126. The Individual Defendants lacked probable cause to conduct a warrantless arrest of Plaintiff.

127. Plaintiff was conscious of, and at no point consented to, the confinement by the Individual Defendants.

128. The Individual Defendants continued to confine Plaintiff unlawfully for days at the hospital and later, for a lengthy stay in a holding cell, despite lacking probable cause to arrest Plaintiff.

129. The Individual Defendants acted intentionally with knowing disregard for Plaintiff's rights under New York state law, in falsely detaining and imprisoning Plaintiff against his will.

130. The actions of the Individual Defendants in falsely detaining, arresting, and imprisoning Plaintiff without reasonable suspicion or probable cause violated Plaintiff's rights under New York state law.

131. By reason of his false arrest, Plaintiff incurred loss of liberty, emotional distress, damage to his reputation, and pecuniary harms.

132. New York City is liable to the Plaintiff under a theory of vicarious liability.

133. For these reasons, he has been damaged in an amount to be determined at trial, and an award of attorneys' fees.

134. Defendants' actions were the direct and proximate cause of violations of Plaintiff's constitutional, state, and other legal rights, and of damages including pain, suffering, mental

distress, anguish, humiliation, loss of income, property, and legal and court expenses as set forth above.

135. The Plaintiff is entitled to compensatory damages commensurate with the damage caused by the Defendants' malicious and unlawful arrest and prosecution resulting in lost wages, a suspended license, and permanent damage to his career.

136. The Plaintiff is entitled to punitive damages in light of the reprehensible nature of the Defendants' conduct.

137. Plaintiff is entitled to attorney's fees and court costs.

### THIRD: MALICIOUS PROSECUTION
*42 U.S.C. §1983*
*Against the City and the Individual Defendants*

138. Plaintiff repeats the allegations above as though set forth again herein.

139. The Individual Defendants, despite knowing that probable cause did not exist to arrest or prosecute Plaintiff, acted to initiate criminal proceedings against Plaintiff.

140. The Individual Defendants provided false and misleading information to the Manhattan District Attorney's Office.

141. The Individual Defendants knew or should have known that they lacked an adequate basis to prosecute Plaintiff for driving under the influence because the drug screen was negative.

142. The Individual Defendants maliciously initiated criminal proceedings against Plaintiff based on their assumption, without support, that Plaintiff had been under the influence of illegal drugs.

143. Plaintiff's criminal proceedings terminated in his favor.

144. Defendants' actions were the direct and proximate cause of violations of Plaintiff's constitutional, state, and other legal rights, and of damages including pain, suffering, mental distress, anguish, humiliation, loss of income, and legal and court expenses as set forth above.

145. The Plaintiff is entitled to compensatory and punitive damages, attorney's fees, and costs.

**FOURTH: MALICIOUS PROSECUTION UNDER NEW YORK STATE LAW**
*Against the City and the Individual Defendants*

146. Plaintiff repeats and realleges all prior paragraphs in this Complaint as if set forth again herein.

147. In committing the acts alleged herein, each of the Individual Defendants were members and agents of the NYPD, acting at all relevant times within the scope of their employment. The Defendant New York City is accordingly vicariously liable as principal for all torts in violation of state law committed by its agents.

148. Defendants' actions were the direct and proximate cause of violations of Plaintiff's constitutional, state, and other legal rights, and of damages including pain, suffering, mental distress, anguish, humiliation, loss of income, property, and legal and court expenses as set forth above.

149. Plaintiff is entitled to compensatory and punitive damages, attorney fees and court costs.

**FIFTH: VIOLATION OF RIGHT TO BE FREE FROM FALSE ARREST (NEW YORK CITY)**
N.Y.C. Administrative Code §8-802
*Against the City and the Individual Defendants*

150. Plaintiff repeats and realleges all prior paragraphs in this Complaint as if set forth again herein.

151. In committing the acts alleged herein, each of the Individual Defendants were members and agents of the NYPD, acting at all relevant times within the scope of their employment. The Defendant New York City is accordingly vicariously liable as principal for all torts in violation of state law committed by its agents.

152. The Defendants' actions were the direct and proximate cause of violations of Plaintiff's constitutional, state, and other legal rights, including loss of liberty, and of damages including pain and suffering, mental distress, anguish, humiliation, loss of income, property, and legal expenses as set forth above.

153. Plaintiff is entitled to compensatory and punitive damages, attorneys fees, and court costs.

### SIXTH: ABUSE OF PROCESS UNDER THE FOURTEENTH AMENDMENT AND NEW YORK STATE LAW
*Against the City and the Individual Defendants*

154. Plaintiff repeats and realleges all prior paragraphs in this Complaint as if set forth again herein.

155. In committing the acts alleged herein, each of the Individual Defendants were members and agents of the NYPD, acting at all relevant times within the scope of their employment. The Defendant New York City is accordingly vicariously liable as principal for all torts in violation of state law committed by its agents.

156. The Individual Defendants knew that they could obtain Plaintiff's drug test results from the hospital.

157. The Individual Defendants knew that they could request the hospital to conduct testing for drugs and alcohol and that Plaintiff could not consent to a blood test because Plaintiff was unconscious.

158. Doctors at the hospital informed the Individual Defendants that hospital staff had already drawn Mr. Kern's blood for testing.

159. The Individual Defendants knew that no reason existed to obtain Plaintiff's refusal to a blood test.

160. The Individual Defendants commenced legal process to compel Plaintiff's refusal and to suspend Plaintiff's license resulting in economic harm and embarrassment to his professional career.

161. The Individual Defendants acted with the improper purpose of causing the initiation of legal process to suspect Plaintiff's commercial license, intending to inflict economic harm, to intimidate Mr. Kern, and to embarrass him in front of hospital staff.

162. The Defendants' actions were the direct and proximate cause of violations of Plaintiff's constitutional, state, and other legal rights, including loss of liberty, and of damages including pain and suffering, mental distress, anguish, humiliation, loss of income, property, and legal expenses as set forth above.

163. Plaintiff is entitled to compensatory and punitive damages, attorneys fees, and court costs.

**WHEREFORE,** Plaintiff requests as follows:

A. That the Court award compensatory damages to Plaintiffs and against the defendants jointly and severally, in an amount to be determined at trial;

B. That the Court award punitive damages to Plaintiffs and against all defendants in an amount to be determined at trial at a sum that will deter such conduct by defendants in the future;

C. That the Court award attorney's fees, costs and disbursements pursuant to 42 U.S.C. §1988, and relevant state and city laws;

D. For a trial by jury;

   E. For a pre-judgment and post-judgment interest and recovery of costs; and

   F. For any and all other relief to which they may be entitled.

Dated: Garden City, New York
   December 2, 2024

         **BARKET EPSTEIN KEARON**
         **ALDEA & LOTURCO, LLP**


         /s/ *Alexander Klein*
         Alexander Klein, Esq.
         Joseph Rochman, Esq.
         666 Old Country Road, Suite 700
         Garden City, New York 11530
         (516) 745-1500